The issue in this case is whether Mr. Arojureye had completed his probationary period, thus allowing the MSPB to have jurisdiction to hear the underlying facts of the termination of his employment. The sub-issue is whether the agency should be stopped from denying that Arojureye completed a one-year probationary period before he was terminated. Mr. Arojureye was a Ph.D. candidate in electrical engineering when he was offered a position, so-called SCEP position, that's a student career experience program as a student training engineer. Mr. Arojureye at the time had under consideration other positions, all of which had one-year probationary periods. The agency, at the time he was offered the position, and at the time he was hired, made the representation of fact that both verbally and in the standard form 50 that was issued, that there was a one-year probationary period. And based on those representations, Mr. Arojureye accepted this job rather than the other jobs he had under consideration. Do you have any precedent from this Court that suggests that under similar circumstances where there was an error in terms of the representation on the SF50 or whatever, that that would be sufficient as an estoppel theory or reliance theory or whatever? It is not. There are a number of cases which we cited in our brief where there were representations that were relied upon. We don't claim that the SF50 is a binding legal document. There are cases that hold that it's not a binding document. But it was a representation made by the agency that that was the probationary period. But he signed this other agreement, right, which was quite detailed in terms of what the requirements were and were not consistent with the argument that he had a one-year probationary period. Am I right about that? The SCEP agreement did not spell out what the probationary agreement was. The SCEP agreement said that you must complete certain requirements to the approval of the government in your educational program, and upon the completion of that, you will be granted permanent status. But it didn't say that there was a two-year probationary period, a one-year probationary period. But that's not consistent with the notion that there's a one-year probationary period and after he serves the one year, irrespective of whether or not the requirements are completed or not completed, he becomes a permanent employee, right? The two are inconsistent. I submit, Your Honor, they are not inconsistent because he could have completed the one-year probationary period, he could have completed his requirements within a year, or he could have completed it after two years, but after two years, he would have had a right to appeal to the MSPB if he was terminated under the second section of the statute. The statute gives appeal rights to accepted service employees, one, if they are not serving a probationary period under initial employment, or have completed two years of continuous service in the same position. Mr. Arajoya was dismissed 23 months into his employment. So had he been there another year, I mean another month, and then dismissed, he still would have had his appeal rights to the MSPB. The agency, at some point, realized that, or to its opinion, that there was not a one-year probationary period and prepared another standard form 50, which was dated in August of 2009, approximately six months before he was terminated, removing that provision from the earlier standard form 50. Can I take you back to the statute? The statute says an individual in the accepted service, other than a preference eligible, and it says number one, who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service. If you look at the legislative history of that provision, it says that the contemplation there was to make sure that until conversion or the passage of a full two years, there would be no right to appeal. In other words, it's the conversion that's necessary here. He was neither converted nor was employed for two years. So under the statute, he can't qualify regardless of what his probationary term was or wasn't. He was, he, the agency's argument is that he didn't complete the probationary period, therefore he didn't, he didn't meet the terms of the first part of that, the paragraphs of one. Our position is that the agency should be stopped from denying that in the interest of justice because the agency misled Mr. Arajoya initially in telling him that there was a one-year probationary period, secondarily not telling him that it had changed his position in mid-course. The first that Mr. Arajoya knew that the agency was claiming he didn't have a one-year probationary period was after he filed his appeal with the MSPB, and the agency's response to his appeal, they came up with this. So you're saying the agency not only is stopped from extending his probationary period, but by implication the agency has to assume that he was converted at the end of that period within the meaning of the statute? What I'm, that's not quite my argument. Or you just want me to read conversion out of the statute? Had he completed his one-year probationary period, then he would have been eligible under the first section as I understand it. Okay. So you're saying conversion's automatic at the end of a probationary period? That's our position, Your Honor. Okay. Now with respect to your estoppel claim, how do you deal with the three or four or five at least cases in this court that have specifically said estoppel can't create jurisdiction? I tried to address that in my brief, Your Honor, in this way, that in our view jurisdiction is created two ways. Number one, Congress sets the standards by which jurisdiction is to be determined. Secondly, facts have to be presented to the MSPB that fall within the standards set by Congress. So jurisdiction isn't automatically vested by Congress saying you have jurisdiction for this, this, and this. There have to be facts to meet it. And it is the facts presented to the MSPB or to anybody that meet the standards set by Congress that creates the jurisdiction. We submit that the agency, by its own misleading of Mr. Arajoya, by Mr. Arajoya's reliance on that misleading information, reliance on it to his detriment, sets up the standard for estoppel to estop the agency from denying that he had not completed his one-year probationary period, and therefore he would be eligible under the standard set by Congress. So you would like us to overrule those earlier cases and conclude that they were wrongly decided? I don't believe that needs to be overruled. I think what I'm saying is consistent with those earlier cases, that the earlier cases which address the standards of Congress say that the standards set by Congress establish – the statutes enacted by Congress establish the standards for jurisdiction. An agency cannot, by its own words, change the standards. The agency, by its own words, cannot change the statute. An agency cannot advise an employee that you can appeal to the MSPB when Congress says you can't appeal to the MSPB. But what an agency cannot do, we submit, is to change the facts. And if it changes the facts in a way that are misleading, then the agency is estopped from asserting facts that would deprive the MSPB or any body – any court from having jurisdiction. So what you're asking is a hearing at the MSPB based on our agreeing with you that some sort of estoppel arose because of – let's assume it was a mistake, apparently it's would be entitled to consider whether or not the SCEP requirements were complied with, or is your theory that it's a clean start thereafter? No. What I'm asking is, exactly as you proposed in the first place, that the MSPB would have jurisdiction to determine whether or not the requirements for the SCEP agreement had been met or not met. But I think it's undisputed that they were not met. Is that right? No. It is disputed. It is disputed. Okay. Mr. Arajoya says he did meet the requirements. He interprets the agreement one way, the agency interprets it the other. I think there's a fair basis to support his interpretation. And his interpretation is as long as he signed up for classes, regardless of whether he ever went, then he was satisfying the criteria? Well, the agency raised two issues. One, that he didn't notify the agency when he changed from the University of Maryland to the GW University, and two, he had to complete the classes. Mr. Arajoya's response is he notified the agency and had its approval to change to George Washington University, and furthermore, that as you read, the SCEP agreement, although he didn't complete the courses, by enrolling in them, by paying, by attending, he had met the terms of the agreement. And I think that's a fair question to be determined by the MSPB. That is an issue of the facts of the interpretation of the agreement. I think that's really... So putting aside the first point, there's no dispute that he didn't finish the classes? That is undisputed, that he did not finish all the classes. But, had he been notified, we submit, back in August of 2009, when the agency changed its mind about the probationary period, it is quite conceivable that Mr. Arajoya could have sped up his studies, could have continued at the University of Maryland, and completed his classes. But he was never notified. He never had the opportunity to meet the agency's objections. Well, I don't understand. He signed the agreement. We're talking about the terms of the agreement with respect to enrollment in classes. He signed that, right? Yes, he did sign that. So he was aware of it, and he was aware of the requirements. Well, yes, he was aware of the requirements, and he felt by his conduct that he was meeting the terms of the agreement. So he thought signing up for courses, but failing to complete them, was sufficient to satisfy the course requirement in the agreement? Under the terms of the agreement, it didn't say you had to complete the courses, as we submit. It said, as he understood it, he had to sign up, he had the opportunity to, if he wasn't able to complete it, to continue the program so that he could complete it. What about the email that he sent that said that he understood he couldn't be converted until he finished his Ph.D. requirements? Isn't that different than just signing up for classes? No, and we don't dispute that. But he would have then met the second test if he was not dismissed 23 months into his service of having two years of current continuous service, and so then he could, then the MSPB would have jurisdiction under the second clause of that, of the statutory definition. Whether or not he actually was able to meet the terms of the SCEP agreement, I submit, Your Honor, is the issue that is before the, would be before the MSPB if they took jurisdiction, and it is a disputed issue. Okay, we will save the rest of your time, Mr. Cohen, and let's hear from the other side. Thank you, Your Honor. Let's see, Mr. Kearney, you split the argument, would you tell us how you've divided it up? Yes, Your Honor, we're essentially splitting it, I'm taking eight minutes, and counsel for the intervener will get seven. Okay. May it please the Court, Mr. Rajarai is essentially asking the Court and has asked the Board to ignore the relevant statute and let a clerical error in an administrative form determine the Board's jurisdiction. This is wrong for several reasons. But usually with a clerical error, you can spot it. One-year probation seems to me, based on the cases we see, to be standard. So when you get an SF-50 which says one-year probation, how would you be entitled even to suspect it might be a clerical error? I think it's very unfortunate that the agency made this mistake, but I would go back to the statute and say, regardless of that mistake, the Board can only take jurisdiction over those cases that it has jurisdiction under statute, regulation, or rule. And just as an agency cannot give an employee appeal rights, an agency cannot give an employee appeal rights by mistake, or the parties cannot agree that are cases within the Board's jurisdiction. There has to be some statutory, regulatory, or a rule basis for the Board's jurisdiction. Does that answer your question? Well, it's not a... it answers the question, but there's something quite troubling about the answer if in fact that is how the law must be interpreted in all cases. But we know that there are exceptions that arise. I think the question is whether this falls within any exception. Well, with regard to those exceptions, there's one key factor in the cases, whether it's a person who took a second appointment within the same agency or was involuntarily removed, that these are people who already have existing appeal rights to the Board, and through some reason, those rights are extinguished and they don't really realize that. And in that case, the Board has held that those people may, in fact, appeal to the Board under their previous appeal rights. In this case, I mean, he was only, what, a month shy of having automatic rights under the second prong? Yes, Your Honor. To appeal? Is that right? Yes, Your Honor. That's correct. And how do you respond to his argument that while he understood he couldn't be completely converted to a civil service employment position until he finished his Ph.D. requirements, that doesn't change the fact that he believed that he at least had the rights to appeal with respect to being cut out of the program? Well, with regards to the 23-month mark, I think having seen many of these cases, agencies probably create a tickler file that says, employee A's probationary period is ending January 1st, and in December of the previous year, they say, we've got to really make sure we want to retain this employee. So that may, I don't know, that may explain the closeness to the 24-month mark. And I'm sorry, Your Honor, I forgot the remainder of your question. Well, his argument is that while he understood that he couldn't be converted until he finished his Ph.D. requirements, that didn't change the fact that he believed he had been an employee long enough to at least appeal the termination from the program. Well, he had that belief apparently based on the clerical error in the SF-50. And I mean, it's very unfortunate, and we see that that same error was repeated in subsequent SF-50s that documented other personnel actions. But the Civil Service Reform Act gives the Board jurisdiction over some matters and not others. And I just don't believe there's a jurisdiction at the Board to hear this matter. Okay. Anything else you need to tell us? No, Your Honor. All right. This Court has no additional questions. Thank you very much. All right. Then let's hear from Ms. Vanderman. May it please the Court. In effect, the SCEP appointment this program provides for an indefinite trial period. So to the extent that other terms were used on the SF-50, like probationary, it really is indefinite because he was permitted to be a SCEP, a Student Career Experience Program employee, provided he was working, it was a work-study agreement, and working towards a degree. And if he had completed the required number of work hours and the degree, he was eligible for conversion to the competitive service. It was not guaranteed. It was not automatic. Mr. Cohen says that they're not asking for that kind of relief. They're not asking for automatic conversion to the competitive service. They're not asking for permanence. All that they want is the right to appeal the interpretation which says that by not completing the class, the SCEP requirement was not met. He would only be able to argue that if the initial threshold question of jurisdiction were in his favor. Yes, precisely. And therefore, he says, since we didn't know, that somehow in someone's mind somebody made a mistake and was trying to correct it, that they shouldn't be prejudiced. Your Honor, only Congress can create the board jurisdiction and the limits of that jurisdiction and the cases are many in this court that hold to that effect that any kind of... But we have a number of cases which have tried to put a note of reality. I'm just looking back, quite early cases where the person was misled, to quote from Covington, that that person shall not be prejudiced, whether the misleading information is innocently provided. It isn't as if there is an absolute bar where the Constitution will collapse and if no adjustment were made, if in fact there were a serious inequity. Yes, in the Covington case and the others upon which Petitioner relies, those employees already were what's called statutory employees that had appeal rights to the board. But there's a significant distinction between an employee who meets the definition of employee under 7511, whether it's a competitive or accepted service, and someone who had applied for a job and never had any appeal rights. The recent Caro decision kind of describes this in terms of what is the definition of that to have the statutory trigger where you can go to the board here. He never met it because he was an accepted service appointee. He met neither Section 1 or 2 of 7511A1C. He had not completed two years, that's undisputed. And he was serving a trial period or a probationary period or whatever you want to call it. What's really controlling is the source of the legal authority for his appointment. And on that we also know that the SF50, what's more important on the SF50 than anything else, even though it's not controlling, but the legal authority referenced 213.3202B, which is the SCEP program. That's the legal authority under which he was appointed. And under that authority, he had to serve a trial period for as long as he was in school and working. And once he completed that program, then he was eligible conversion to the competitive service, even though that was not guaranteed. And in the addendum to our brief at pages 28 to 29, the regulations that govern the SCEP program provide, for example, that in order to be converted to the competitive service, he would have to have a favorable recommendation from the employing agency. So it's not automatic. Are you asking us to consider whether or not this is a person who would have been permanently employed? No, Your Honor. What's key here is... Then why does it matter? I was just trying to describe kind of the background of the SCEP program in order to respond to some of the, and actually Petitioner's counsel did say, in effect, he would have been converted, and I'm trying to rebut that. But the issue here is jurisdiction. Congress did not provide for an employee in the SCEP program to have appeal rights to the board unless he met either one or two of 7511A1C. He met neither because he didn't finish the two years, and he was serving in a trial period. So your position is that even if the two years had passed, there would be no appeal rights? No, if the two years had passed, Your Honor, he would have had appeal rights to the board because he would have met subsection two, and those sections are in the alternative. He only had to meet one, not both of the subsections. If he had, as we explained in our brief, if he had worked for more than two years, he would have had appeal rights, but he didn't. And I would like to respond to points made earlier that it seemed like this was at the 11th hour, but in effect, the SCEP agreement put the burden on him to provide grades, et cetera, and six months or more before he got the notice in December of 2009, the agency was asking him for information about his schooling, and I say this because this should have been no surprise to him that he had to submit this information and that he could be terminated if he wasn't in the program because the SCEP agreement provided that and the regulations governing the SCEP program provided that, but all this goes to the issue of whether the board had any jurisdiction, and there are a number of cases from the court where even if the agency had provided misinformation or failed to provide information, which there's no evidence in this case, it still, as a matter of law, does not create jurisdiction at the board. In the Dunkelbarger case, the agency had informed the employee that he had appeal rights to the board, but really the collective bargaining agreement was the exclusive remedy and there were no appeal rights. In the Rice case, there was information that the employee would have appeal rights, but he was appointed to a defense intelligence agency for which there were no appeal rights. In the Campion case, the agency told the employee, first hired, that as SES, he would have appeal rights, but that was not the case, so really it's a question of law, not fact, and unless Congress has provided for jurisdiction over a particular category of employee, he has no appeal rights to the board. In our addendum to our brief, the regulations governing the SCEP program spell that out in detail, and we've also included an OPM fact sheet about the SCEP program that also explains, you know, as a matter of law and what's out there, how this program works, including, you know, whether there are appeal rights to the board. Okay. Any questions for Ms. Rademan? Any questions for Ms. Rademan? No. Thank you. Thank you. Mr. Carney, you seem to be out of time. I would like to address three points that the government has raised. First of all, Mr. Carney says that in the other cases where a stopper was allowed to permit the employees to appeal, the employees had appeal rights in their prior job. In all of those cases, the employees were not appealing anything that happened to them in their prior job. They were appealing what happened to them in a later job, so I submit that's a distinction without a difference. The second point is that Ms. Rademan raised the Carroll case, a recent case before this Court, Carroll v. the MSPB. There are actually two Carroll cases, one in 2009 and one in 2010. In the first iteration of this case, the 2009 case, the Court remanded the case for determination of whether Mr. Carroll was informed by the agency of the duration of his temporary employment and whether his knowledge of that was material to his relinquishment of his appointment rights. That's exactly the situation we have here. When it came back before this Court again in 2010, the Court found that the agency's failure to advise Mr. Carroll of the terms of his appointment did not create appeal rights. In this case, the agency did advise Mr. Arajoya of what it now claims is incorrect information. It, at some point, realized the information was incorrect. It never corrected that information before it terminated Mr. Arajoya, and he relied on that information in accepting the appointment. Mr. Arajoya has said in his pleadings that he had other jobs available to him, but he accepted this one because it had a one-year probationary period, as the other ones did. He wouldn't have accepted it. He would have accepted one of the others. So I submit, Your Honor, this case is, Your Honors, exactly the kind of case where justice and equity require that the agency be stopped from asserting facts that they changed in midcourse. Thank you. Okay. Thank you, Mr. Cohen, Mr. Carney, Mr. Adams. The case is taken under submission.